QUASION, APPELLEE, *v.* FRIEDMAN, APPELLANT.*

---

*Motion to certify the record overruled, April 20, 1960.

(No. 2509—Decided May 29, 1959.)

*Mr. Myron Teitelbaum,* for appellee.
*Mr. Frederick C. O'Grady,* for appellant.

KERNS, J. This is an appeal on questions of law from a judgment of the Court of Common Pleas, Division of Domestic Relations, of Montgomery County, Ohio.

The action was instituted on January 16, 1958, when Terry C. Quasion filed a complaint alleging that she was an unmarried woman, that she was delivered of a child on April 1, 1956, and that Emmanuel M. Friedman was the father of the child.

The alleged father entered a plea of not guilty, and trial was held before a jury on August 25, 1958.

The jury returned a verdict in favor of plaintiff, appellee herein, judgment was entered accordingly and a motion for new trial overruled.

For his first two assignments of error the appellant, defendant below, claims:

(1) That the verdict and judgment is contrary to law and against the weight of the evidence, and

(2) That the court erred in overruling defendant's motion for a dismissal at the end of plaintiff's case and for a directed verdict at the close of all the evidence.

These assignments may be considered together, since both are predicated on facts which disclose that the appellee was married at the time the child was conceived and that, therefore, the presumption of legitimacy must be overcome by the appellee.

The appellee was granted an interlocutory decree of divorce from one Samuel Becker by the Supreme Court of New York County, New York, on April 25, 1955, but the decree did not become final until July 25, 1955. At the trial of this case, appellee testified that the child was conceived sometime between June 30, 1955, and July 9, 1955.

Appellant therefore contends that the appellee was required to show that it was *impossible* for her former husband to be the father of the child, and cites in support of that contention the case of *Powell* v. *State, ex rel. Fowler* (1911), 84 Ohio St., 165, 95 N. E., 660, 36 L. R. A. (N. S.), 255. The authority of that case is completely depreciated, however, by reference to the case of *State, ex rel. Walker,* v. *Clark,* 144 Ohio St., 305, 58 N. E. (2d), 773, where the second and third paragraphs of the syllabus read as follows:

"2. A child conceived during the existence of a lawful marital relation is presumed in law to be legitimate—a procreation of the husband and wife.

"3. Such presumption is not conclusive and may be rebutted by evidence, which must be clear and convincing, that there was no sexual connection between husband and wife during the time in which the child must have been conceived. (Paragraph two of the syllabus in the case of *Powell* v. *State, ex rel. Fowler,* 84 Ohio St., 165, overruled.)"

The prevailing rule (128 A. L. R., 720) was adopted by this

court in the case of *McGhee* v. *McGhee*, 45 Ohio Law Abs., 465, 64 N. E. (2d), 254, which held that the presumption, that a child conceived during wedlock is legitimate, can be overcome by evidence that is "strong and convincing."

We must therefore turn to the record to determine whether the jury had sufficient evidence before it to satisfy the degree of proof required to overcome the presumption that a child conceived during wedlock is legitimate.

There is evidence to the effect that appellee's husband was served with notice of divorce proceedings on September 15, 1954; that the matter was heard on January 18, 1955; that an interlocutory decree of divorce was granted on April 25, 1955; and that the decree became final on July 25, 1955.

There is further evidence to the effect that appellee and appellant met in Florida sometime during December 1954, while the divorce was pending; that they accompanied one another to New York; and that they arranged meetings thereafter in both New York and Dayton.

The appellee testified that her child was conceived sometime between June 30, 1955, and July 9, 1955; that she was with the appellant in Dayton during that time; that they frequently had intercourse during that period of time; that she was not out with any other man during the entire year of 1955; and that the child was born on April 1, 1956.

This testimony of the appellee was uncontradicted and was partially corroborated by the appellant who testified that he slept with the appellee every evening during the ten days between June 30, 1955, and July 9, 1955.

The testimony of the appellee was further corroborated by the exhibition of the child to the jury. (*Snyder* v. *State, ex rel. Harris*, 12 Ohio Law Abs., 1.)

The record is silent as to the whereabouts of appellee's former husband during 1955, but, as stated by this court in the case of *Yerian* v. *Brinker*, 33 Ohio Law Abs., 591, 35 N. E. (2d), 878:

"There are circumstances in this case over and beyond the express testimony of the parties which tend to support the theory of inaccessibility of the wife to the husband, namely, among others, the fact that they were separated under condi-

tions which thereafter led to an action for divorce, which at all times, until it was granted, was pending. This clearly evinced an intention to separate and live apart, and following this intention it appears that the parties lived in places widely separated.''

The evidence was considered by the jury in the light of instructions by the court, which left no doubt that the burden of overcoming the presumption of legitimacy by clear and convincing evidence was upon the appellee.

We cannot say that the verdict and judgment are contrary to law or against the weight of the evidence.

The third assignment of error reflects on the exclusion of certain evidence offered by appellant during the course of the trial.

Specifically, the appellant objects to the exclusion of testimony on cross-examination directed to the credibility of the appellee and her propensity for adultery.

This assignment must be considered in view of the generally recognized rule that the extent or limitation of cross-examination rests in the sound discretion of the court trying the case, subject only to review where that discretion has been abused. 42 Ohio Jurisprudence, 335, Section 333.

We recognize that evidence is admissible to show that the mother had sexual intercourse with other men at about the time the child was begotten. However, the character of the mother is not in issue, and there is no prejudicial error in excluding evidence merely showing that the mother had intercourse with other men, if no further evidence is proffered to the effect that she actually had such intercourse, or had the disposition to have such intercourse, at the time when the child was conceived. 7 Ohio Jurisprudence (2d), 494, Section 72.

In the instant case, the exclusion of testimony which might show that the appellee had some propensity for adultery could hardly be considered prejudicial because the record is replete with testimony to the effect that the appellee carried on an adulterous relationship with the appellant during 1955.

And, upon further examination of the record, we do not find that the trial court abused its discretion by unreasonably restricting this area of cross-examination.

For his fourth assignment of error, appellant claims the court abused its discretion in failing to allow appellant to re-open the case for purposes of introducing as an exhibit a copy of the divorce decree.

It is apparent from the record and particularly from the charge of the court that the exclusion of this exhibit could have had no bearing on the outcome of this case.

Anything it might have proved or disproved was already before the jury and treated accordingly in the charge of the court.

In fact, counsel for appellant, in commenting on the exclusion of the exhibit, agreeably and correctly concluded, "I don't believe it's necessary anyway because she testified to the fact that she was married at the time and that the decree was not filed until the 25th of July, 1955."

With reference to the fifth assignment of error, appellant states that the court erred in refusing to give the jury certain special charges.

The court refused to give the defendant's charge number three, which reads as follows:

"The court charges you as the law in this case that the evidence disclosed in this case indicates that the child was conceived while the mother was married. A strong presumption always obtains that a child born either in lawful wedlock, or within a competent time after its termination, is legitimate. Such presumption must be overcome by the plaintiff by clear and convincing evidence that the husband could not possibly be the father of the child. In this respect, impossibility of access is the most convincing circumstance to rebut the presumption."

This charge repeats a legal proposition contained in defendant's charge number two, and any such repetition should be avoided. 4 Ohio Jurisprudence (2d), 279, Section 997.

Furthermore, the last sentence in the charge would tend to confuse rather than clarify the issues before the jury because the rule requiring that access be shown to be impossible no longer prevails in Ohio. *State, ex rel. Walker,* v. *Clark, supra* (144 Ohio St., 305).

The court also refused to give defendant's charge number four, which reads as follows:

"The court charges you as the law in this case that if there was possibility of intercourse between the plaintiff and her husband, Samuel Becker, the plaintiff must prove by clear and convincing evidence that he was impotent. If the plaintiff has failed to show impotency on the part of her husband, Samuel Becker, during the time of conception, it is your duty to return a verdict for the defendant."

The objection to this charge was properly sustained. *State, ex rel. Walker,* v. *Clark, supra.*

Appellant also urges that the court erred in failing to give defendant's charge number six, which reads as follows:

"The court charges you as the law in this case that the law favors legitimacy, and will indulge in all presumptions to make a child legitimate. This presumption of legitimacy has as its source a deeply rooted judicial aversion to the bastardizing of issue. The testimony of the mother alone is insufficient to rebut the presumption, where it appears that she led a dissolute and adulterous life."

Although this charge is correct, in part at least, as an abstract statement of law (7 Ohio Jurisprudence [2d], 489, Section 65), it is not entirely responsive to the facts and evidence presented in this case. Appellee's testimony was corroborated to some extent by the exhibition of the child and was corroborated even more by the appellant himself who testified that he slept with the appellee many evenings during the period of possible conception.

Furthermore, the record leaves no doubt that the jury was aware of the appellee's adulterous conduct with appellant, and it is reasonable to assume that her credibility as a witness was gauged accordingly by the jury in determining whether the presumption of legitimacy had been overcome by clear and convincing evidence.

We have again examined the charge of the court in its entirety and find it fair, clear and complete.

The record in this case discloses no prejudicial error, and the judgment of the trial court will accordingly be affirmed.

*Judgment affirmed.*

WISEMAN, P. J., and CRAWFORD, J., concur.