[Cite as *Marchese Servs. v. Bradley*, 2009-Ohio-2618.]

IN THE COURT OF APPEALS OF OHIO
THIRD APPELLATE DISTRICT
PUTNAM COUNTY

MARCHESE SERVICES, INC.,

    APPELLEE,

    v.                                CASE NO.  12-08-06

AMBER BRADLEY,

    APPELLEE,

    v.                                O P I N I O N

DIRECTOR, OHIO DEPARTMENT
OF JOB AND FAMILY SERVICES,

    APPELLANT.

Appeal from Putnam County Common Pleas Court
Trial Court No. 08-CV-24

Judgment Affirmed

Date of Decision:    June 8, 2009

APPEARANCES:

    *Eric A. Baum* for Appellant

    *Arthur P. Cohen and Shannon J. George* for Appellee,
        Marchese Services, Inc.

**ROGERS, J.**

{¶1} Defendant-Appellant, Ohio Department of Job and Family Services ("ODJFS"), appeals the judgment of the Putnam County Court of Common Pleas reversing the decision of the Unemployment Compensation Review Commission ("Review Commission") and finding that just cause existed for the termination of Amber Bradley's employment with Marchese Services. On appeal, ODJFS argues that the Review Commission's decision finding that Bradley's employment termination was without just cause and granting her unemployment compensation should be reinstated because the decision is supported by sufficient evidence; that the trial court should have found Bradley's employment termination to be without just cause because her physical limitations were the indirect cause of her termination, and because her request for employment opportunities that accommodated her physical limitations was denied; and, that the trial court should have found that Bradley was constructively, and without just cause, terminated from her employment because her absenteeism and tardiness were the result of being forced to commute fifty minutes round-trip while enduring pregnancy and post-pregnancy complications. Finding that the Review Commission's decision was against the manifest weight of the evidence, and that just cause existed for Bradley's termination, we affirm the judgment of the trial court.

{¶2} In March, 2007, Bradley filed an application with the Ohio Department of Job and Family Services, Office of Unemployment Compensation ("OUC") for unemployment compensation due to her February 2007 discharge from her employment with Marchese Services ("Marchese").

{¶3} Subsequently, the OUC sent a questionnaire to Marchese, asking it to explain the details of Bradley's discharge. In response, Marchese stated that Bradley was discharged for excessive tardiness and absenteeism in violation of the company's standard operating procedures which were disclosed to her through the employee manual; that the reason given by Bradley for her tardiness and absences were illnesses, doctor's visits for her and her child, difficulties finding a babysitter, transportation problems, and having to drive an extended distance to work; that out of forty-nine instances of tardiness or absenteeism, she only provided two doctor's notes; that the company's disciplinary procedure progresses as follows: verbal notice, written conference summary, verbal warning, suspension, written warning with probation, and termination; that, on September 14, 2006, Bradley was given a verbal notice due to the fact that she had taken extensive time off; that Bradley was given a written conference summary on November 30, 2006, which detailed her inefficient production numbers and a time line and goals for future improvements; that she was given a verbal warning on January 16, 2007, which detailed the company's policy on tardiness and personal

phone calls during work hours; that she was suspended from January 17 through January 19, 2007, for continued problems with tardiness, absenteeism, and early departures; that Bradley was given another warning and placed on probation from February 19, 2007, until March 2, 2007, for continued absenteeism, tardiness, and early departures, during which time she was required to abide by all break policies and not permitted to have any instances of absenteeism, tardiness, or early departures; and, that, due to her tardiness during the probation period, she was discharged. Enclosed with its response, Marchese attached several exhibits which detailed the company's standard operating procedures and workplace conduct policy, Bradley's confirmed receipt of the employee manual and workplace conduct policy, the company's disciplinary procedures, and written copies of the disciplinary actions taken against Bradley. Additionally, Marchese attached a list of all instances of approved vacations, absenteeism, tardiness, early departures, and extended breaks. Out of forty-five documented instances of absences, tardiness, early departures, or extended breaks, excluding pre-approved time off before hire, maternity leave, and her suspension, forty-one instances were unexcused and only four were excused for illness or doctor's visits, of which there were only two documented doctor's notes.

{¶4} Additionally, the OUC sent Bradley a questionnaire regarding the details of her termination, to which she responded that the reason for her tardiness

during the probation period was because she had to take her four-month-old daughter to the doctor for her scheduled check-up one day and for an allergic reaction another day; that she furnished a doctor's note to Marchese for these instances of tardiness; that she was aware of the company absenteeism and tardiness policy, but that she was not permitted to take time off for doctor's visits under the Family Medical Leave Act ("FMLA") because the FMLA did not apply to Marchese; that she had not received warnings or other discipline for instances of tardiness or absenteeism in the past year; that she did not know if the company had a grievance procedure, and if so, that they did not offer it to her; and, that the reason for her tardiness and absenteeism was due to multiple required doctor's visits she made during her pregnancy and after her daughter's birth.

{¶5} On March 26, 2007, the OUC issued a determination of unemployment compensation benefits, finding that Bradley was entitled to benefits in the amount of $175 per week because her termination from Marchese was without just cause, as Marchese failed to follow its established disciplinary policy when Bradley violated the attendance procedures.

{¶6} In April 2007, Marchese filed an appeal from the OUC's determination, arguing that Bradley was discharged for just cause and is, therefore, ineligible for benefits pursuant to R.C. 4141.29(D)(2)(a), as she was absent or tardy seventy-four days from July 20, 2006, through February 28, 2007, and she

was discharged after the company followed its disciplinary policy, in which she was given a verbal notice, a written conference summary, a verbal warning, a suspension, a written warning and probation, and an additional e-mail warning reminder. Attached to Marchese's appeal were written copies of the disciplinary actions taken against Bradley.

**{¶7}** On May 11, 2007, the OUC issued a redetermination of unemployment compensation, finding that Bradley was still eligible for $175 per week, as a review of the original facts and those submitted in Marchese's appeal did not support a change in the initial determination. The redetermination stated, in pertinent part:

> **The claimant was discharged by Marchese Services Incorporated on February 28, 2007. Evidence submitted establishes that the employer failed to follow the established disciplinary policy when the claimant violated the attendance procedures. Ohio's legal standard that determines if a discharge is without just cause is whether the claimant's acts, omissions, or course of conduct were such that an ordinary person would find the discharge not justifiable. After a review of the facts, this agency finds that the claimant was discharged without just cause under Section 4141.29(D)(2)(a), Ohio Revised Code.**

(May 2007 Redetermination, p. 2).

**{¶8}** Subsequently, Marchese filed an appeal from the OUC's May 11, 2007 redetermination, again asserting that Bradley's discharge was for just cause, as she was absent or tardy for seventy-four days from July 20, 2006, through February 28, 2007; that the company's disciplinary procedure was followed prior

to Bradley's discharge through the use of a verbal notice, a written conference summary, a verbal warning, a suspension, a written warning with probation, and an e-mail warning reminder; and, that no evidence was submitted indicating that the disciplinary procedure was not followed. Marchese again attached written copies of the disciplinary actions taken against Bradley.

{¶9} Additionally, Bradley's personal handwritten statement was filed with the OUC[1], which stated that, shortly after she started working at Marchese, she began having pregnancy complications requiring her to make frequent doctor's visits; that, in August 2006, Marchese informed her that she would be required to start working in the company's Glandorf, Ohio, office, which was about a twenty-five minute drive from her home; that, after a month of working in the office, she asked if she could return to working from home, as she was concerned about going into labor while driving to and from work; that she was told she would need to remain working in the office; that, shortly thereafter, she took maternity leave; that, when she returned to work, she was required to return to working in the office, but was given the option of working only three days per week instead of the full five days; that she decided to work the full five days because she needed the money; that, when she was later placed on two-weeks probation, it became impossible for her to not miss any days due to her daughter's doctor's appointment

---

[1] We note that the record does not indicate whether Bradley or Marchese filed the statement.

and subsequent illness; and, that when she missed days due to her daughter's doctor's appointment and illness, she was dismissed.

{¶10} In June 2007, the OUC transferred Marchese's appeal to the Review Commission.

{¶11} In September 2007, Bradley filed a personal statement and several documents with the Review Commission indicating that she gave birth on September 14, 2006, while employed at Marchese; that she was discharged from the hospital on September 16, 2006; that she returned to work the week of November 4, 2006, approximately two weeks and three days after giving birth; that returning to work that soon after giving birth did not give her an adequate opportunity to get settled as a first-time mother and attend the multiple follow-up doctor's visits for her and her daughter; that her job was supposed to allow her to work from home, but that Marchese asked her to work in the office soon after she returned to work from her maternity leave; that she was given a prescription to deal with her separation anxiety because she was forced to leave her daughter with a babysitter when she went to work in the office; that she could not afford her medication due to a reduction in her hours, as she was told on several occasions to go home early or take the rest of the week off due to a lack of work; that she was told by Marchese that they were also cutting other employees' hours due to a lack of work, but that she discovered by talking with other employees that she was the

only employee whose hours were reduced; and, that she was discharged when she missed work to take her daughter to a doctor's appointment, even though she provided a doctor's note.

{¶12} In November 2007, the Review Commission held a hearing on Marchese's appeal, at which the following testimony was adduced. Linda Barbusca, a senior operations manager at Marchese, testified that Bradley was hired on May 15, 2006, to be a canvass caller for Marchese; that she was discharged in February 2007 due to excessive absenteeism and tardiness; that Bradley was originally trained and worked in the Glandorf, Ohio office, but that she was permitted to work from home for a period of time; that after working from home for some time, Marchese required her to again work from the office due to her low performance, her attendance problems, and for retraining; that Bradley was asked to provide medical documentation if she was not going to be able to work a set number of hours, and she provided this documentation for all doctor's appointments that she had; that, in addition to missing work hours due to doctor's appointments, Bradley also missed time because she could not find a babysitter, because she had car trouble, and because of personal issues at home; that around half of the occurrences of tardiness, absenteeism, and early departures were due to doctor's appointments; and, that, as she continued to have attendance problems, she was given various warnings and suspensions pursuant to the standard

operating procedures of the company, including a verbal warning on September 14, 2006, a written warning on January 30, 2007, a suspension from January 17 until January 19, 2007, and a two-week probation period starting on February 19, 2007.

{¶13} Bradley testified that the reason for her last tardiness, which led to her discharge, was that she had to take her daughter to the hospital due to either a food reaction or the flu; that prior to this tardiness, she had received a warning that she would be on probation for two weeks and could not miss any days; that her husband could not take her daughter to the doctor on that occasion because he was already at work and was the only manager on duty, and that she did not remember if she asked her mother to take her daughter to the doctor; that she remembered receiving other verbal warnings prior to being placed on probation; that she remembered receiving warnings about making personal phone calls while at work and taking extended breaks; that Barbusca's statement that she missed work because of car problems was incorrect, and that she was late on that day because she had a near-collision with a tractor trailer, subsequently had a panic attack, and needed someone to pick her up because she could not drive; that most of her absenteeism was due to either doctor's appointments or illnesses; and, that she always provided Marchese with a doctor's excuse if she missed work time due to a doctor's appointment.

{¶14} Subsequently, the Review Commission upheld the OUC's redetermination, finding that Bradley was discharged without just cause and stating the following findings of fact:

> **Claimant has an extensive history of absenteeism and tardiness. However, claimant was pregnant and the majority of the occurrences which led to her discharge were due to her pregnancy issues, her personal illness, or the illnesses of her newborn child.**
>
> **Claimant was given the appropriate warnings as required by company policy before being discharged.**

(Nov. 2007 Decision, pp. 1-2).

{¶15} In December 2007, Marchese filed a request for a reassessment of the Review Commission's decision, stating that the reason behind the Review Commission's finding that Bradley was discharged was that the majority of her attendance problems were due to either personal illness, pregnancy, or problems with her newborn child; however, that of Bradley's eighty-four instances of early departures, tardiness, taking extended breaks, and being completely absent, only thirteen were for doctor's appointments, of which only one doctor's note and two appointment cards were provided. Subsequently, Marchese's request for a reassessment was denied.

{¶16} In January 2008, Marchese appealed the Review Commission's denial of its reassessment request to the Putnam County Court of Common Pleas, again, arguing that the Review Commission erred in finding Bradley's discharge

was without just cause, as she had an extensive history of tardiness, absenteeism, early departures, and taking extended breaks.

{¶17} In September 2008, the trial court reversed the decision of the Review Commission, finding that Bradley's termination was for just cause, thereby making her ineligible to receive unemployment compensation pursuant to R.C. 4141.29(D)(2)(a). The trial court stated the following in its judgment entry:

> **Ms. Bradley worked for employer as a canvas caller. She was initially permitted to work from home and as of August 2006 was required to work at employer's Glandorf, Ohio site during this period. Ms. Bradley had ongoing medical issues including complications from a pregnancy. Spokesperson Linda Barbusca reported that Ms. Bradley reported to work late or was absent on numerous occasions. On February 19, 2007, Ms. Bradley was placed on a two week probationary period and was required to have perfect attendance. She subsequently missed one day of work and was tardy for several others including February 28, 2007, the day on which she was fired. Thirty-eight (38) absences or tardies are listed in the documented attendance of Amber Bradley. A doctor's note was provided on four (4) occasions.**
>
> **The record reflects that Appellee had a total of eighty four (84) instances when she left early, came in late, took extended breaks, or was completely absent. In addition, thirty nine (39) days were off for maternity leave. Sixty two (62) instances of absenteeism were with no reason given.**
>
> **\* \* \***
>
> **The record in this case clearly reflects that Appellee had a number of absences and for instances [sic] of being to work tardy. The majority of the absences were not documented \* \* \*. Furthermore, the Appellee continued to fail to supply documentation of absenteeism after being placed on a two week probationary period.**

**This Court finds that the Review Commissions' decision was against the manifest weight of the evidence. The discharge of Amber Bradley was for just cause and the determination by the Review Commission was in error.**

(Sept. 8 Judgment Entry, pp. 2-5).

{¶18} It is from this judgment that ODJFS appeals[2], presenting the

following assignments of error for our review.

*Assignment of Error No. I*

**IT IS UNDISPUTED THAT MS. BRADLEY WAS ENDURING THE EFFECTS OF A COMPLICATED PREGNANCY DURING ALL TIMES RELEVANT TO HER UNEMPLOYMENT-COMPENSATION CLAIM. BECAUSE THE REVIEW COMMISSION'S FINDING THAT THE MAJORITY OF MS. BRADLEY'S ABSENCES RESULTED FROM THIS BONA FIDE ILLNESS IS SUPPORTED BY SUFFICIENT EVIDENCE, ITS DECISION GRANTING HER UNEMPLOYMENT-COMPENSATION BENEFITS SHOULD BE REINSTATED. (*BELLEMAR PARTS INDUS., INC. V. BUTLER* (SEPT. 27, 1991), 3RD DIST. NO. 14-90-21, 1991 OHIO APP. LEXIS 4642, FOLLOWED).**

*Assignment of Error No. II*

**DUE TO THE RESTRICTED PHYSICAL CAPABILITIES RESULTING FROM HER PREGNANCY, MS. BRADLEY ASKED WHETHER SHE COULD REVERT TO WORKING FROM HER HOME. BECAUSE MARCHESE, WITHOUT EXPLANATION, DENIED THIS REQUEST FOR AN EMPLOYMENT OPPORTUNITY THAT CONFORMED TO HER PHYSICAL CAPABILITIES, HER TERMINATION WAS WITHOUT JUST CAUSE. (*IRVINE V. STATE OF***

---

[2] Although Bradley is a party to the case, ODJFS, represented by the Attorney General of Ohio, is the actual appellant, seeking to have its unemployment compensation determination upheld. Bradley's interest in receiving unemployment compensation is, therefore, implicitly represented through ODJFS.

*OHIO, UNEMPLOYMENT COMP. BD. OF REV.* **(1985), 19 OHIO ST.3D 15, SYLLABUS, FOLLOWED.)**

*Assignment of Error No. III*

**ALTHOUGH MARCHESE'S REQUIREMENT THAT MS. BRADLEY WORK FROM THE GLANDORF OFFICE RESULTED IN CONDITIONS SO INTOLERABLE – SHE HAD TO COMMUTE 50-MINUTES ROUND TRIP WHILE ENDURING A COMPLICATED PREGNANCY – THAT A REASONABLE PERSON WOULD HAVE FELT COMPELLED TO RESIGN, MS. BRADLEY CONTINUED TO WORK BECAUSE OF HER FAMILY'S FINANCIAL SITUATION. BECAUSE HER TERMINATION RESULTED FROM THIS SITUATION, SHE IN EFFECT WAS CONSTRUCTIVELY, AND WITHOUT JUST CAUSE, DISCHARGED. (*MAUZY V. KELLY SERVICES, INC.*, 75 OHIO ST.3D 578, 1996-OHIO-265, PARAGRAPH FOUR OF THE SYLLABUS, FOLLOWED.)**

{¶19} Initially, we note that all three assignments are essentially arguments of factual issues and fail to properly state specific instances of error. Accordingly, ODJFS has failed to comply with App.R. 16(A)(3), Loc.R. 7(A) and Loc.R. 11(B), and, pursuant to App.R. 12(A)(2), we are permitted to disregard any assignments of error not specifically identified or separately argued. However, in the interests of justice, we elect to address ODJFS' assignments of error, and, due to the nature of ODJFS' arguments, we will address assignments of error one, two, and three together.

*Assignment of Error Nos. I, II, and III*

{¶20} In its first assignment of error, ODJFS argues that its decision granting Bradley unemployment compensation benefits should be reinstated. Specifically, it asserts that the trial court's finding that Bradley's termination was for just cause is not entitled to deference, and that the Review Commission's decision finding that the majority of Bradley's absences resulted from a bona fide illness was supported by sufficient evidence, thereby making her termination without just cause and entitling her to unemployment compensation.

{¶21} In its second assignment of error, ODJFS argues that Bradley's termination was without just cause, and, therefore, that she is eligible for unemployment compensation because her termination resulted from Marchese's refusal to accommodate her physical limitations involved with her pregnancy and post-pregnancy issues by granting her request for alternate employment opportunities.

{¶22} In its third assignment of error, ODJFS argues that Bradley is eligible for unemployment compensation because she was constructively discharged without just cause. Specifically, it contends that, although Bradley did not resign, she, in effect, was constructively discharged because she was forced by Marchese for illegitimate business reasons to commute fifty minutes round-trip to work while enduring pregnancy and post-pregnancy issues, which caused her to miss work, thereby leading to her discharge.

*Standard of Review*

**{¶23}** An appellate court will not reverse the decision of the Review Commission as long as it is not unlawful, unreasonable, or against the manifest weight of the evidence. *Geretz v. Ohio Dept. of Job & Family Servs.,* 114 Ohio St.3d 89, 91, 2007-Ohio-2941; *Benton v. Unemployment Compensation Bd. of Rev.*, 3d Dist. No. 6-2000-13, 2001-Ohio-2201, citing *Tzangas, Plakas & Mannos v. Ohio Bur. of Emp. Serv.* (1995), 73 Ohio St.3d 694, 1995-Ohio-206, paragraph one of the syllabus. See, also, R.C. 4141.282(H). A judgment is not against the manifest weight of the evidence as long as it is supported by some competent, credible evidence. *C. E. Morris Co. v. Foley Const. Co.* (1978), 54 Ohio St.2d 279, 280. This same standard of review applies at each appellate level of the unemployment compensation proceeding, including the court of common pleas, appeals court, and the Supreme Court of Ohio. *Verizon N. v. Ohio Dept. of Job & Family Servs.* 3d Dist. No. 9-06-22, 2007-Ohio-112, ¶18, citing *Tzangas*, 73 Ohio St.3d at 696. Accordingly, we are "'required to focus on the decision of [the Review Commission], rather than that of the common pleas court[.]'" *Carter v. Univ. of Toledo*, 6th Dist. No. L-07-260, 2008-Ohio-1958, ¶13, quoting *Markovich v. Emps. Unity, Inc.,* 9th Dist. No. 21826, 2004-Ohio-4193, ¶10.

**{¶24}** The determination of factual questions is primarily a matter for the Review Commission *Simon v. Lake Geauga Printing Co.* (1982), 69 Ohio St.2d

41, 45, and every reasonable presumption must be made in favor of the Review Commission's decision and its findings of fact. *Carter*, 2008-Ohio-1958, at ¶13. Furthermore, an appellate court's jurisdiction is limited to a review of the record that was created from the administrative proceedings before the Review Commission. *Verizon N.,* 2007-Ohio-112, at ¶19, citing *Bindas v. Admr., Ohio Bur. of Emp. Servs.*, 8th Dist. No. 57425, 1990 WL 125456.

*"Just Cause" Termination and Unemployment Compensation Eligibility*

**{¶25}** R.C. 4141.29 governs unemployment compensation eligibility and provides, in part:

> **(D) Notwithstanding division (A) of this section, no individual may serve a waiting period or be paid benefits under the following conditions:**
>
> **\* \* \***
>
> **(2) For the duration of the individual's unemployment if the director finds that:**
>
> **(a)  The individual quit work without just cause or has been discharged for just cause in connection with the individual's work \* \* \*.**

R.C. 4141.29(D)(2)(a).

**{¶26}** In order to receive unemployment compensation, the employee bears the burden of proof to establish that the employment termination was without just cause. *Oriana House, Inc. v. Terrell*, 9th Dist. No. CA 19550, 2000 WL 277906, citing *Irvine v. State Unemployment Comp. Bd. of Rev.* (1985)*,* 19 Ohio St.3d 15,

17; *Shephard v. Ohio Dept. of Job & Family Servs.,* 166 Ohio App.3d 747, 753, 2006-Ohio-2313. Just cause is defined as "'that which, to an ordinary intelligent person, is a justifiable reason for doing or not doing a particular act.'" *Gossard v. Director, Ohio Dept. of Job & Family Servs.*, 3d Dist. No. 6-04-06, 2004-Ohio-5098, ¶9, quoting *Peyton v. Sun T.V.* (1975), 44 Ohio App.2d 10, 12. The determination of whether just cause exists for an employee's dismissal under R.C. 4141.29 is based upon whether there was some fault on the part of the employee that led to the dismissal. *Benton*, 2001-Ohio-2201, citing *Tzangas,* 73 Ohio St.3d 694, at paragraph two of the syllabus. Furthermore, where an employee demonstrates "'unreasonable disregard for [the] employer's best interests,'" just cause for the employee's termination is said to exist. *Kiikka v. Ohio Bur. of Emp. Servs.* (1985), 21 Ohio App.3d 168, 169, quoting *Stephens v. Bd. of Rev.*, 8th Dist. No. 41369, 1980 WL 355009. See, also, *Binger v. Whirlpool Corp.* (1996), 110 Ohio App.3d 583, 590.

{¶27} Excessive absenteeism and tardiness provide an employer with just cause to dismiss an employee. *Bennett v. Director, Ohio Dept. of Job & Family Servs.*, 7th Dist. No. 03-MA-222, 2005-Ohio-3313, ¶28; *Higgins v. Patterson Pools, Inc.*, 10th Dist. No. 99AP-1394, 2000 WL 1376464. However, a dismissal for excessive absenteeism and tardiness may be classified as being without just cause and, therefore, eligible for unemployment compensation under R.C.

4141.29(D)(2)(a) if the absences were the result of a bona fide illness. *Durgan v. Ohio Bur. of Emp. Servs.* (1996), 110 Ohio App.3d 545, 550.

{¶28} Furthermore, an employee's voluntary resignation on the basis of health problems will be found to be a resignation without just cause, and, therefore, ineligible for unemployment compensation, unless the employee demonstrates that a request was made for employment opportunities that accommodated the employee's physical capabilities. *Eifel v. Ohio Dept. of Job & Family Servs.*, 148 Ohio App.3d 167, 171, 2002-Ohio-2672, citing *Irvine,* 19 Ohio St.3d 15, at syllabus.

{¶29} In the case sub judice, Marchese filed several documents with both the OUC and the Review Commission which detailed every step it took in its discipline of Bradley, including documents evidencing a verbal notice, a written conference summary, a verbal warning, a suspension, a written warning with probation, and an e-mail warning reminder. Furthermore, Marchese also filed documents detailing Bradley's instances of absenteeism, tardiness, early departures, or extended breaks, and even though some of those documents differed in the exact number of days these instances occurred, they each evidenced around forty-five occurrences, of which only around five were actually excused and around two where doctor's notes were provided. Even though the trial court and Marchese stated several different numbers regarding Bradley's instances of

absenteeism, tardiness, or early departures, the record is clear that she missed excessive work time, with very little of that time being excused.

**{¶30}** Additionally, it is also clear from the record that Bradley submitted very little evidence to the OUC or to the Review Commission in support of her claim for unemployment compensation. The administrative record only contains two doctor's notes and one document detailing Bradley's hospital stay when she gave birth to her daughter. The only other evidence submitted by Bradley were her personal statements arguing her side of the case. While Bradley asserted to the OUC and to the Review Commission that most instances of her absenteeism, tardiness, or early departures were due to doctor's appointments or having to take care of her newborn daughter, she provided almost no evidence of these occurrences, and it is difficult for this Court to lend much credibility to her argument that she needed to miss work on forty separate occasions in a nine month span, in addition to her maternity leave, mostly because of illnesses or doctor's appointments. Even if we took Barbusca's statement at the Review Commission's hearing that around half of Bradley's occurrences of missed work time were due to doctor's appointments or illnesses, that still leaves over twenty instances of unexcused absences, tardiness, and early departures, more than enough to conclude that her discharge was for just cause.

{¶31} Moreover, ODJFS' reliance upon this Court's decision in *Bellemar Parts Indus. Inc., v. Butler*, 3d Dist No. 14-90-21, 1991 WL 216877, is misplaced. In that case we found that an employee's discharge for absenteeism, tardiness, and early departures on six occasions was without just cause because five of the occasions were due to the employee's or her child's illness. In this case, however, Bradley had over forty instances of absenteeism, tardiness, or early departures, of which only about five were documented as being excused. As such, this case is clearly distinguishable from *Bellemar Parts,* and we do not find its logic to be applicable.

{¶32} Accordingly, because of the copious documentation provided by Marchese detailing Bradley's excessive unexcused absenteeism and tardiness, and the progressive discipline administered against her, and because of the dearth of evidence submitted by Bradley to the OUC and to the Review Commission to support her argument that her absenteeism and tardiness were due to medical issues, we find the following: that Bradley failed to meet her burden of proof establishing that her discharge was without just cause; that her occurrences of missed work were not the result of a bona fide illness; that she demonstrated "unreasonable disregard for [Marchese's] best interests," *Kiikka,* supra; and, consequently, that her termination was for just cause. Although we are required to make every reasonable presumption in favor of the Review Commission's

decision and its findings of fact, such presumptions in this case are clearly unreasonable and against the manifest weight of the evidence.

**{¶33}** Furthermore, we find to be without merit ODJFS' argument that Bradley was constructively discharged without just cause because Marchese failed to provide suitable employment to accommodate to her physical limitations and because it forced her to commute fifty minutes roundtrip to work, both causing her to miss work time due to pregnancy and post-pregnancy issues, thereby leading to her discharge. First, a constructive discharge analysis requires the employee to voluntarily terminate employment, see *Eifel*, 148 Ohio App.3d 167, but here, Bradley was discharged by Marchese. Second, in analyzing whether Bradley's termination was without just cause because Marchese failed to accommodate her physical limitation and forced her to commute to the office, both subsequently causing her to miss work time, the administrative record demonstrates that Bradley only made one request for employment accommodations while she was pregnant, asking Marchese to allow her to work from home. Bradley did not submit evidence to the OUC or to the Review Commission showing that she made a subsequent request after her return from maternity leave, and she even turned down an offer by Marchese to allow her the option of working three days per week to better accommodate any post-pregnancy issues. While Bradley argued to the Review Commission that it was not financially feasible for her to only work three

days per week, she still voluntarily chose to refuse Marchese's accommodation; as such, she cannot now complain that her discharge was without just cause because it resulted from Marchese's failure to accommodate her physical limitations. Additionally, Bradley submitted no evidence to the OUC or to the Review Commission demonstrating the number of absences or instances of tardiness she could have avoided had she been able to work from home instead of commute to the office, and, as we previously mentioned, the evidence failed to support a finding that most of her missed time was due to illnesses or doctor's appointments.

{¶34} Consequently, because the administrative record demonstrates that just cause existed for Bradley's discharge, we find that the trial court did not err in reversing the decision of the Review Commission granting Bradley unemployment compensation.

{¶35} Accordingly, we overrule ODJFS' first, second, and third assignments of error.

{¶36} Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**PRESTON, P.J. and SHAW, J., concur.**

**/jlr**